UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                              Case No.: 8:13-cr-584-CEH-SPF

JUAN JOHNNY JASSO

_____/

## O R D E R

This matter comes before the Court on Defendant's Verified First Amended Motion for Reduction in Sentence/Compassionate Release Pursuant to 18 U.S.C. [§] 3582(c)(1)(A)(1) (Doc. 250). In the motion, Defendant requests compassionate release due to his medical condition and COVID-19 concerns.  The Government filed a response in opposition on December 1, 2020.  Doc. 256. The Court, having considered the motion and being fully advised in the premises, will deny without prejudice Defendant's Motion for Compassionate Release.

## I.      BACKGROUND

On September 23, 2014, Defendant, Juan Johnny Jasso pleaded guilty to conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine or 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 946 and 841(b)(1)(A)(viii). Doc. 130. On December 18, 2014, Defendant was sentenced to 210 months' imprisonment and 60 months' supervised release, in addition to other standard conditions and a $100 penalty. Doc. 167.  Defendant, who is 39 years old, is currently

incarcerated at Coleman Low, FCI in Sumterville, Florida, and is scheduled to be released from prison in approximately eight years on February 26, 2029.  *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/.

On October 6, 2020, Defendant filed the instant Motion for Reduction in Sentence/Compassionate Release Pursuant to 18 U.S.C. [§] 3582(c)(1)(A)(1), requesting modification of his sentence due to the COVID-19 pandemic coupled with his medical conditions and concerns about the Bureau of Prison's (BOP) response to the pandemic at Coleman Low, FCI. Doc. 250.  Defendant alleges he suffers from high blood pressure, sleep apnea, and clinical obesity. *Id.*  Defendant also alleges that "[t]he response by the BOP to this pandemic has been lackluster and reactionary, to say the least." *Id.*

The Government responds saying the BOP continues to take significant measures to protect the health of the inmates in its charge.  Doc. 256. Specifically, the BOP limits internal inmate movement and strongly encourages the use of face masks and social distancing.  *Id.* at 4. The BOP quarantines all asymptomatic inmates for a period of at least 14 days, and places symptomatic inmates in isolation "until they test negative for COVID-19 or are cleared by medical staff[.]" *Id.* Additionally, the facility limits group gatherings "with attention to social distancing to the extent possible," and monitors staff temperatures prior to entry. *Id.* at 4–5. All social visits have been suspended, along with facility tours; and those who require access, such as certain lawyers, volunteers, and contractors, are screened for symptoms. *Id.* at 5.

In response to Defendant's motion, the Government argues the motion should be denied because Defendant fails to provide an extraordinary and compelling reason to permit his early release from prison (*Id.* at 11–18) and because he has not met his burden of proving that he is no longer a danger to society. *Id.* at 18–19.

## II.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. That provision states:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

18 U.S.C. § 3582(c)(1) (italics reflecting amendment under First Step Act).

Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id.* Courts are to consider the § 3553(a) factors, as applicable, as part of the analysis.[1] *See* §3582(c)(1)(A).

---

[1] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the

The defendant generally bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (providing that defendant bears the burden of establishing a reduction of sentence is warranted under § 3582(c) due to a retroactive guideline amendment); *United States v. Heromin*, Case No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *Hamilton* in the context of a § 3582(c) motion for compassionate release).

## III.   DISCUSSION

### A.   The Government does not Contest that Defendant has Satisfied the Administrative Exhaustion Requirement.

On April 13, 2020, Defendant sought compassionate release through the BOP administrative process. His request was denied on April 20, 2020. Doc. 240 at 2. On April 17, 2020, prior to receiving the Warden's denial, Defendant filed his first Motion Seeking Emergency Compassionate Release Under the First Step Act & the Cares Act. Doc. 239. On October 6, 2020, Defendant filed an amended motion. Doc. 250.  The Government concedes Defendant has exhausted his administrative remedies, acknowledging more than thirty days has elapsed between the date on which the Defendant was denied administrative relief and the date on which he filed the instant motion for compassionate release. Doc. 256 at at 11. The Court agrees administrative exhaustion has been satisfied and will address the merits of Defendant's claim.

---

applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

> **B.**     **Defendant fails to Demonstrate Extraordinary and Compelling Reasons for Compassionate Release.**

Although Defendant has exhausted his administrative remedies, because he fails to demonstrate extraordinary and compelling reasons supporting compassionate release, his motion is due to be denied. In its existing policy statement on compassionate release, the Sentencing Commission identifies four categories in which extraordinary and compelling circumstances may exist: (1) the defendant's medical condition; (2) the defendant's advanced age (at least 65 years old); (3) family circumstances; and (4) other reasons. U.S.S.G. §1B1.13, cmt. n. 1(A)–(D). Only the first and fourth factor are potentially relevant here, as Defendant is only 39 years of age and does not allege any extraordinary family circumstances.

Under the first factor, a defendant's medical condition may provide an extraordinary and compelling reason to support a reduction in sentence when the defendant is: (1) suffering from a terminal illness, *i.e.*, a serious and advanced illness with an end of life trajectory; or (2) suffering from a serious physical or medical condition that substantially diminishes his ability to care for himself within the prison environment and from which he is not expected to recover. U.S.S.G. §1B1.13, cmt. n. 1(A). Defendant alleges he suffers from high blood pressure, sleep apnea, and clinical obesity. Doc. 250 at 4.

In his motion, Defendant provided medical records from April 24, 2017, which indicate health problems including asymptomatic elevated blood pressure, without hypertension. *Id.* at 23. The records note that Defendant "hovers between high normal

and slightly above normal [blood pressure] parameters." *Id.* The report states that the examiner recommended medication, but Defendant refused. *Id.* Additionally, the medical report confirms that Defendant suffers from sleep apnea, and that he responds well to the CPAP machine. *Id.* at 23. There is no record evidence that he is suffering from a terminal illness with an end-of-life trajectory. Although Defendant claims COVID-19 has delayed his ability to obtain medication for his elevated blood pressure, Defendant's condition is "relatively mild" and thus, there is no indication that any potential delay precludes his ability to care for himself in the prison environment or that a potential delay will significantly change his condition. Therefore, Defendant fails to demonstrate an extraordinary and compelling reason under this provision.

The fourth factor, which has been described as a catch-all provision, applies when, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in the subdivisions (A) through (C)." U.S.S.G. §1B1.13, cmt. n. 1(D). Defendant similarly fails to demonstrate extraordinary and compelling reasons for a reduction in his sentence under this provision. He alleges that his increased risk of illness from COVID-19 due to his medical conditions constitutes an extraordinary and compelling reason. Doc. 250 at 4. The Court disagrees.

The CDC provides that adults of any age with diagnosed obesity (body mass index [BMI] of greater than 30 kg/m$^2$ are at increased risk of severe illness from the virus that causes COVID-19, and that adults with hypertension and high blood

pressure may be at a similarly increased risk.[2] The CDC does not include sleep apnea as a potential risk factor, but Defendant cites to a recent study to the contrary. Doc. 250 at 4. Defendant states that his BMI is 33, which is in the lowest level of obesity. *Id.* Medical records indicate a mild and asymptomatic case of elevated blood pressure (for which he was given the opportunity for treatment), and well-controlled sleep apnea. *Id.* at 23. Defendant fails to provide evidence that his medical ailments are such that he is unable to care for himself in the prison environment or that his conditions are severe enough to warrant compassionate release.

Further, general concerns about possible exposure to COVID-19 do not meet the criteria for an extraordinary and compelling reason under U.S.S.G. §1B1.13. *See id*; *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence.").

Moreover, while Defendant alleges that the BOP's procedures have been inadequate, the Government's response outlines the detailed plans the BOP has undertaken and implemented to help sharply mitigate the risks of COVID-19

---

[2] Centers for Disease Control and Prevention, *People with Certain Medical Conditions* (updated Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 6, 2021).

transmissions in BOP institutions, including Coleman Low, FCI. Coleman Low currently has zero inmates and twenty-three staff members that are positive for COVID-19. *See* https://www.bop.gov/coronavirus/. Overall, 203 inmates and 11 staff members have recovered from COVID-19. *Id.* While it is important to note that one inmate and one staff member at this BOP facility have died from COVID-19, the overall number of recovered inmates and staff members indicate that the BOP is adequately containing and mitigating the effects of any outbreaks which may have occurred. On this record, Defendant fails to demonstrate that his alleged medical conditions, coupled with the potential for exposure to COVID-19, constitute an extraordinary and compelling reason for release under 18 U.S.C. 3582(c)(1)(A)(1) and U.S.S.G. §1B1.13.

## C.      Section 3553 Factors

Even if Defendant was able to establish an extraordinary and compelling reason, however, the Court must make a finding that Defendant would not be a danger to the safety of any person or the community. *See* USSG § 1B1.13(2). The amount of money and volume of narcotics involved in Defendant's crime demonstrates he is a danger to the community. In addition, the § 3553(a) factors strongly disfavor a sentence reduction. Defendant has served less than a third of his 210-month sentence, which under the totality of the circumstances, does not adequately reflect the seriousness of his offense, teach Defendant respect for the law, nor promote deterrence.

The Court finds that even if Defendant could establish an extraordinary and compelling reason to support compassionate release, a reduction in his sentence would be contrary to the § 3553(a) factors. Accordingly, it is hereby

**ORDERED**:

Defendant's Verified First Amended Motion for Reduction in Sentence/Compassionate Release (Doc. 250) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on February 15, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Juan Johnny Jasso, *pro se*
Counsel of Record